UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 23-00232-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HUEY P. SCOTT, JR. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is the United States of America's ("the Government") Notice of Intent to Introduce Evidence of Other Acts under Federal Rule of Evidence 404(b). See Record Document 43. The Government also filed a Memorandum in Support of its Rule 404(b) Notice. See Record Document 50. The Government seeks to introduce similar acts not detailed in the indictment that are "relevant in demonstrating [Defendant Huey P. Scott, Jr.'s] knowledge, intent, absence of accident or mistake, mode of operation, opportunity, motive, planning and preparation, namely, knowingly distributing methamphetamine from inside his home to two different confidential informants ("CI") during five (5) separate video-recorded controlled buys between on or about January 17, 2022 and October 6, 2022." Record Document 43 at 2. For the reasons contained in the instant Memorandum Ruling, evidence relating to the controlled buys on June 7, 2022, July 13, 2022, and October 6, 2022 is admissible and evidence relating to the controlled buys on January 17, 2022 and September 21, 2022 is inadmissible.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 7, 2022, investigators applied for and received a state search warrant for Defendant Huey P. Scott, Jr.'s ("Scott") home in Many, Louisiana. On October 11, 2022, investigators executed that warrant and found approximately 140 grams or five

ounces of pure methamphetamine; packaging material like sandwich/Ziploc-style baggies; drug paraphernalia for smoking methamphetamine; and several firearms. The firearms included a small, loaded handgun inside a black leather bag, which also appeared to contain small Ziploc-style baggies of drugs, and a pistol grip sawed-off shotgun of legal barrel length. The pistol grip sawed-off shotgun was found on Scott's couch. It was loaded with the safety switched to "fire." Further, inside a shed located a short distance from Scott's home was a second sawed-off shotgun of illegal barrel length. The second sawed-off shotgun was unregistered in the National Firearms Registration and Transfer Record. Scott waived his <u>Miranda</u> rights and admitted to possessing the guns inside his home, to possessing some methamphetamine inside his home but only for him to "smoke," and acknowledged knowing that the unregistered sawed-off shotgun was inside his shed but denied possessing it because someone else had just dropped it off. Scott was ultimately charged in a three-count indictment with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); possession of firearms during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and receipt or possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

The Government submits that Scott committed prior, similar acts not detailed in the indictment that are relevant in demonstrating his knowledge, intent, absence of accident or mistake, mode of operation, opportunity, motive, planning, and preparation, namely, knowingly distributing methamphetamine from inside his home to two different CIs during five separate video and audio recorded controlled buys:

    Buy No. 1 on 01/17/2022 - 3.26 g with purchase price of $120
    Buy No. 2 on 06/07/2022 – 0.65 g with purchase price of $20

      Buy No. 3 on 07/13/2022 – 3.59 g with purchase price of $90
      Buy No. 4 on 09/21/2022 – 3.43 g with purchase price of $100
      Buy No. 5 on 10/6/2022 – 3.39 g with a purchase price of $80

The recordings of the controlled buys depict Scott selling methamphetamine packaged in small Ziploc-style baggies as he sat on his couch in his Many, Louisiana home. During the controlled buy on July 13, 2022, Scott can be seen holding a black leather bag on his couch. Additionally, the Government alleges that during the controlled buy on October 6, 2022, Scott specifically mentioned knowing that the legal length for shotgun barrels is 18 inches. Moreover, during that same controlled buy, he reached over his couch and picked up a pistol sawed-off shotgun. The Government now requests the admission of the five separate video-recorded controlled buys set forth above, including all relevant statements made during those buys. The defense opposes such request, arguing the submission of the five controlled buys is prohibited evidence of propensity and "will convict Mr. Scott." Record Document 55 at 5.

## LAW AND ANALYSIS

**I.    Legal Standards**

Rule 404(b)(1) of the Federal Rules of Evidence provides a general prohibition on the admission of evidence of prior crimes, wrongs, or other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) states that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

In the Fifth Circuit, <u>Untied States v. Beechum</u>, 582 F.2d 898 (5th Cir. 1978) (*en banc*) provides the standard for evaluating all evidentiary questions under Rule 404(b). In <u>Beechum</u>, the Fifth Circuit held:

> What [Rule 404(b)] calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.

582 F.2d at 911. Under Rule 401, evidence is relevant if it has any tendency to make a fact that is of consequence in the action more or less probable than it would be without the evidence. Under Rule 403, the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**II.     Analysis**

Here, the Government believes Scott will challenge knowledge and intent to possess the distribution-level quantity of drugs recovered from his home as to Count One; intent to possess the guns in furtherance of drug trafficking as to Count Two; and knowledge of the specific characteristics of the unregistered sawed-off shotgun as to Count Three. Under the first step of the <u>Beechum</u> analysis, the Court must determine if the extrinsic offense evidence – here, the five controlled buys – is relevant to an issue other than the defendant's character. See <u>Beechum</u>, 582 F.2d at 911. When the defendant's intent to commit the offense charged is an issue, the relevancy of the extrinsic offenses derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. <u>See id.</u> "The reasoning is that

because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." Id. The relevancy of the extrinsic offense is a function of its similarity of the offense charged. See id. "In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Id. (internal citations omitted). Courts are to take into account the overall similarity of the extrinsic and charged offenses. See id. at 915. "Equivalence of the elements of the charged and extrinsic offenses is not required." Id. Additionally, courts evaluate "how much time separates the extrinsic and charged offenses: temporal remoteness depreciates the probity of the extrinsic offense." Id.

Scott's other acts of distributing methamphetamine occurred from his couch inside his home during the ten-month period preceding his arrest. In the June 7, 2022 controlled buy, Scott can be heard discussing the need to replenish his supply of methamphetamine. In the July 13, 2022 controlled buy, Scott possessed a black leather bag which was later found during the execution of the search warrant to contain a handgun and small baggies of drugs. Finally, in the October 6, 2022 controlled buy, Scott possessed a pistol grip sawed-off shotgun of legal length on his couch and can be heard discussing his knowledge of legal shotgun barrel lengths. He described how he personally "cuts" his own barrels. In light of the expected defenses at trial, the Court finds these three controlled buys – and Scott's statements made during those buys – are relevant to demonstrate Scott's knowledge, intent, absence of accident or mistake, opportunity, motive, planning, and preparation. While the charged offenses in the indictment do not

involve any drug transactions or controlled buys, the Court believes the June 7, 2022, July 13, 2022, and October 6, 2022 have unique and distinct details evidencing similarity to the charged offenses. Conversely, the same cannot be said of the January 17, 2022 and September 21, 2022 controlled buys and the Court does not believe they are proper Section 404(b) other acts evidence.

The Court must now proceed to the second step of Beechum as to the June 7, 2022, July 13, 2022, and October 6, 2022 controlled buys. The second step of the Beechum analysis is to determine whether the probative value of the prior acts is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence under Rule 403. See Beechum, 582 F.2d at 913-17. "Unfair prejudice" in this context "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Notes of Advisory Committee on Rules. In Beechum, the Fifth Circuit set forth the following guidance for making a determination under Rule 403:

> The task for the court in its ascertainment of probative value and unfair prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense . . . The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403.
>
> Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily. If the defendant's intent is not contested, then the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is uniformly excluded.

582 F.2d at 914 (internal citations and quotations omitted).

Under these rules, the Court finds that the probative value of the June 7, 2022, July 13, 2022, and October 6, 2022 controlled buys is not substantially outweighed by any of the enumerated risks in Rule 403. The incremental probity of these prior acts is high due to the nature, similarity, and temporal proximity of the other acts to the charged offenses. The Court is cognizant of the risk of unfair prejudice, as there is always a possibility that a defendant's past acts will be used by a jury for an impermissible purpose, such as to convict the defendant based on the belief that he has a propensity to commit crimes. However, this risk can be tempered by a jury instruction not to use the prior acts for that purpose, and the Court must presume that the jury will follow such instructions. See Beechum, 582 F.2d at 917; see United States v. Hurn, 496 F.3d 784, 788 ("we must presume that the jurors followed" the district court's instruction to consider a prior conviction only as evidence of intent). Additionally, Rule 403 does not exclude all evidence that poses any risk of unfair prejudice or any of the other enumerated risks in the Rule; rather, it tolerates those risks to the extent that they do not substantially outweigh the probative value of the evidence. See also United States v. West, 22 F.3d 586, 597 (5th Cir. 1994) ("exclusion of evidence under Rule 403 . . . should occur only sparingly"). Thus, even though there is certainly some risk of unfair prejudice or other enumerated risks in Rule 403 that could result from the admission of the three controlled buys, those risks can be tempered by a limiting instruction. The Court further finds that the risks do not substantially outweigh the high probative value of Scott's prior acts for the purpose of proving knowledge, intent, absence of accident or mistake, opportunity, motive, planning, and preparation.

## CONCLUSION

The Court finds that Scott's prior controlled buys on June 7, 2022, July 13, 2022, and October 6, 2022 are relevant, at minimum, to establishing Scott's knowledge and intent. Such evidence of prior acts is admissible to prove knowledge and intent under Rule 404(b) so long as its probative value is not substantially outweighed by any of the risks enumerated in Rule 403. The Court finds that the high probative value of the June 7, 2022, July 13, 2022, and October 6, 2022 controlled buys is not substantially outweighed by any of the risks enumerated in Rule 403. Therefore, evidence relating to the controlled buys on June 7, 2022, July 13, 2022, and October 6, 2022 is admissible. Conversely, evidence relating to the controlled buys on January 17, 2022 and September 21, 2022 is inadmissible.

An order consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 10th day of September, 2024.

_____
United States District Judge